

# NUMBER 13-02-450-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**WESTERN STEEL COMPANY, INC.,**                                        **Appellant,**

**v.**

**HANK ALTENBURG,**                                                                  **Appellee.**

## On appeal from the 347th District Court of Nueces County, Texas.

## MEMORANDUM OPINION ON REMAND

### Before Justices Yañez, Castillo[1], and Garza
### Memorandum Opinion On Remand by Justice Yañez

By two issues, appellant, Western Steel Company, Inc. ("Western"), challenges the

legal and factual sufficiency of the jury's finding that appellee, Hank Altenburg, was not

Western's borrowed employee.  On remand, we hold the evidence is legally insufficient to

---

[1] The Honorable Errlinda Castillo, former Justice of this Court, did not participate in this memorandum opinion because her term of office expired December 31, 2006.  *See* TEX. R. APP. P. 41.1(c).

support the jury's finding that Altenburg was not Western's borrowed employee. Accordingly, we sustain Western's first issue, reverse the judgment in Altenburg's favor, and render judgment that he take nothing.

## Procedural Background

In our original opinion in this case, a divided panel of this Court affirmed the trial court's judgment.[2] Following *Garza v. Exel Logistics, Inc.*,[3] we held that Western failed to establish that the exclusive remedy provision of the workers' compensation statute barred its liability because it did not show that it was covered by worker's compensation insurance at the time of Altenburg's injury and that such coverage would have covered his claim.[4] The Texas Supreme Court held that we erred in addressing whether Western had workers' compensation insurance at the time of Altenburg's injury because it was "undisputed."[5] The supreme court therefore reversed our judgment, remanded the cause to us, and instructed us to consider Western's sufficiency challenges to the jury's finding that Altenburg was not its borrowed employee.

## Standards of Review and Applicable Law

An appellant challenging the legal sufficiency of the evidence supporting an adverse

---

[2] *Western Steel Co., Inc. v. Altenburg*, 169 S.W.3d 347, 353 (Tex. App.–Corpus Christi 2005), *rev'd and remanded*, 206 S.W.3d 121, 124 (Tex. 2006). Because our original opinion contains a description of the factual background, we do not repeat the facts here.

[3] *See Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 481 (Tex. 2005).

[4] *Western Steel*, 169 S.W.3d at 350-53. On original submission to this Court, the record contained only a copy of Western's general liability insurance policy; it did not contain a copy of its workers' compensation insurance policy.

[5] *Western Steel*, 206 S.W.3d at 124. Despite Western's failure to submit evidence that it was covered by workers' compensation insurance, the supreme court directed us to accept Western's assertion that it was covered by workers' compensation insurance because Altenburg did not dispute it. *See id.*

2

finding on which he had the burden of proof must show that "the evidence establishes, as a matter of law, all vital facts in support of the issue."[6] We must consider the evidence in the light most favorable to the judgment, crediting evidence favorable to the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable jurors could not.[7] "If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law."[8] Evidence that might be "some evidence" when considered in isolation is nevertheless rendered "no evidence" when contrary evidence shows it to be incompetent.[9] "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[10] Jurors are the sole judges of the credibility of the witnesses and the weight to be given to their testimony.[11]

To prevail on a factual sufficiency challenge to an adverse finding on an issue for which the appellant had the burden of proof, the appellant must demonstrate that the adverse finding is against the great weight and preponderance of the evidence.[12] After considering and weighing all of the evidence, this Court can only set aside the verdict if it

---

[6] *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

[7] *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

[8] *Francis*, 46 S.W.3d at 241.

[9] *City of Keller*, 168 S.W.3d at 813.

[10] *Id.* at 827.

[11] *Id*. at 819.

[12] *Francis*, 46 S.W.3d at 242.

3

is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.[13] When both legal and factual sufficiency challenges are raised on appeal, the court must first examine the legal sufficiency of the evidence.[14]

Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance against an employer for a work-related injury sustained by the employee.[15] "An employee may have more than one employer within the meaning of the TWCA [Texas Workers' Compensation Act] and each employer may raise the exclusive remedy provision as a bar to the employee's claims."[16] "In light of the TWCA's definitions of employer and employee[,] the plaintiff's claims are barred by the exclusive remedy provision if the client company [here, Western] establishes: (1) it was the plaintiff's employer within the meaning of the TWCA, and (2) it was covered by a workers' compensation insurance policy."[17]

In determining whether Western was Altenburg's employer, "we consider traditional indicia, such as the exercise of actual control over the details of the work that gave rise to the injury."[18] In *Garza*, the supreme court determined that the client company was the

---

[13] *Id.*

[14] *Montemayor v. Ortiz*, 208 S.W.3d 627, 647 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981)(per curiam)).

[15] TEX. LAB. CODE ANN. § 408.001(a) (Vernon 2006).

[16] *Western Steel*, 206 S.W.3d at 123 (citing *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 143 (Tex. 2003) and *Garza*, 161 S.W.3d at 476). The "TWCA" is the Texas Workers' Compensation Act. *See* TEX. LABOR CODE ANN. § 401.001 (Vernon 2006).

[17] *Id.* (citing *Garza*, 161 S.W.3d at 475-77).

[18] *Id.* (quoting *Garza*, 161 S.W.3d at 477).

plaintiff's employer based on the following: (1) the plaintiff was working on the client company's premises when injured; (2) he was working in the furtherance of the client company's day-to-day business; and (3) the details of his work that caused his injury were directed by the client company.[19]

## Analysis

By its first issue, Western contends that as a matter of law, the evidence established that Altenburg was its borrowed employee. Western argues that the testimony of five witnesses, including Altenburg, established that it had the right to direct and control Altenburg's work.

We begin by examining the record to determine whether there is some evidence to support the jury's finding that Altenburg was not Western's borrowed employee. Altenburg asserts that Western must show that the details of the work being done at the time of the accident were under its control. We do not disagree with Altenburg's characterization of Western's burden.

It is undisputed that Altenburg was on Western's premises when the accident occurred. With respect to which company was directing the details of the work he was performing when he was injured, Altenburg points to evidence that (1) he brought his own hand tools, safety equipment, and gloves; (2) when injured, he was providing welding services that did not require specific instruction; and (3) he was not under the direct supervision of any Western employee at the time of his injury.

However, Altenburg's own testimony contradicts his assertions. Although he

---

[19] *Garza*, 161 S.W.3d at 477; *see also Bliss v. NRG Indus.*, 162 S.W.3d 434, 437 (Tex. App.–Dallas 2005, pet. denied) (applying *Garza* "traditional indicia").

5

testified that Western provided him no training in cambering[20] a beam "while it was on the floor," he also testified that a Western supervisor demonstrated the technique by (1) "starting off" the first beam, (2) briefly observing Altenburg as he continued cambering the beam, and (3) advising Altenburg that he would "check" on him periodically. On cross-examination, Altenburg testified, in pertinent part:

> Q [Western's counsel]: Let me ask you this. Would you agree that Western Steel had the right to direct and control your activities when you were a temporary worker on their premises?
>
> A [Altenburg]: Yes.
>
> Q: Would you agree with me, sir, that on the day that you were doing the cambering, on that process, Western Steel had the right to direct and control your activities with regards to the cambering process?
>
> A: Yes.
>
> . . . .
>
> Q: And you agree that Western Steel provided all the tools and machinery to complete your work there.
>
> A: Yes.
>
> Q: You agree that they provided all the safety equipment, face shields, the goggles, except for the gloves and work boots that you had yourself, correct?
>
> A: Correct.
>
> Q: And with regards to the specific cambering process, Western Steel's the one who had the right to direct and control and instruct you on how to camber the beams, correct?
>
> A: Yes.
>
> Q: Western Steel supervised you while you were cambering the beams. Remember, you testified that the supervisors stood there and watched you

---

[20] "Cambering" involves heating a steel beam to cause it to bend in the middle.

do it?

A: Yes.

Q: Okay. So they had that right to direct and control that.

A: Yes.

. . . .

Q: And Western Steel, the supervisors, could modify the way that you were doing the work. They had the right to control and modify the way that you were doing that work, correct?

A: Yes.

. . . .

Q: Okay. Now, sir, is it not true that, before you started the cambering process, one of the Western Steel supervisors came up to you that morning and said, We've got some beams and they're gonna need to be cambered, correct?

A: Correct.

Q: And what they did is, they—this supervisor explained to you, generally, an overall summary of what you were going to be doing, correct?

A: Yes.

Q: And after he gave you that overall summary, he assisted you in setting up the work area, bringing the beams in, bringing the boards in and setting up the three or four beams, correct?

A: I believe—When I arrived on the scene, I believe, the beams had already been positioned.

Q: So, if Mr. Hedtke [a Western shop foreman] comes in here and says that he worked with you in setting up the area for the purpose of cambering,—

A: Yes.

Q: —would he be correct?

A: Yes.

7

Q: Okay. And then, Mr. Hedtke said that he gave you specific instructions and explained to you how you needed to camber these beams. That occurred, correct?

A: Correct.

The evidence, including this testimony, established that Altenburg (1) was working on Western's premises when he was injured; (2) was working in furtherance of Western's day-to-day business; and (3) the details of the work that caused his injury were directed by Western.[21] We conclude that there is legally insufficient evidence to sustain the jury's finding that Altenburg was not Western's borrowed employee.[22]

We also conclude that this evidence established as a matter of law that Altenburg was Western's borrowed employee.[23] We sustain Western's first issue. Because of our disposition of Western's first issue, we need not reach its second issue.[24]

We reverse the trial court's judgment and render judgment in Western's favor.

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion on Remand delivered
and filed this the 10th day of April, 2008.

---

[21] *See Garza*, 161 S.W.3d at 477; *Bliss*, 162 S.W.3d at 437.

[22] *Francis*, 46 S.W.3d at 241.

[23] *See Francis,* 46 S.W.3d at 241; *Garza*, 161 S.W.3d at 477; *Bliss*, 162 S.W.3d at 437.

[24] *See* TEX. R. APP. P. 47.1.

8